# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
# DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Detention of | ) | No. 72290-5-I |
| | ) | |
| CURTIS BROGI | ) | |
| | ) | |
| | ) | |
| STATE OF WASHINGTON, | ) | |
| | ) | |
| Petitioner/Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CURTIS BROGI, | ) | UNPUBLISHED OPINION |
| | ) | |
| Respondent/Appellant, | ) | FILED: March 21, 2016 |
| | ) | |

VERELLEN, A.C.J. — Curtis Brogi appeals the trial court's denial of an

unconditional release trial after his 2014 annual review as a sexually violent predator. A

sexually violent predator committed at the Special Commitment Center (SCC) is entitled

to an unconditional release trial if he shows probable cause to believe that his mental

condition has so changed "through positive response to continuing participation in

treatment" that he would be safe to be at large if unconditionally released from

commitment.[1] For the last six years, Brogi has actively participated in the SCC's Native

American healing program (NAHP), but he has not recently participated in the SCC's

sex offender treatment program. At the time of his show cause hearing, the controlling

---

[1] RCW 71.09.090(4)(b)(ii).

statutes did not define "treatment." The trial court concluded Brogi's participation in the NAHP was not "treatment" under RCW 71.09.090(4)(b)(ii).

Brogi contends the legislature did not intend to limit treatment to sex offender-specific treatment for purposes of triggering an unconditional release trial. Brogi's expert concluded Native American healing strategies are cognitive based and are as efficacious as sex offender-specific treatment. But as described here, the NAHP lacks the oversight, recordkeeping, and accountability appropriate to satisfy the legislature's community safety goals.

We affirm.

## FACTS

From 1986 to 1996, Brogi was alleged to have committed several violent sexual acts against women. Brogi was also convicted of several sex-related offenses. The State filed a sexually violent predator petition shortly before Brogi's release from prison. After a jury trial in 2000, Brogi was civilly committed as a sexually violent predator.

Ten years ago, the SCC began the NAHP. This program has cultural, psychological, emotional, and spiritual components and involves multiple phases of personal growth. The program addresses Native American values and uses traditional ceremonial practices to help individuals. The program uses positive strategies for emotional healing, personal responsibility, problem solving, and internal control.

The SCC invited Brad Mix to lead the NAHP. Mix, a graphic designer, volunteers as the program's "spiritual advisor." Mix has no experience treating sexually violent predators. Mix has not received any training specific to sexually violent predators and has limited knowledge of "sex offender treatment modalities."

The NAHP's activities include sweat lodges, healing circles, talking circles, the medicine wheel, and a 12-step program. Those activities are not psychotherapy; they are private. Although Mix collaborates with SCC staff, the NAHP is not supervised by any SCC treatment team member. The NAHP does not keep official records of its activities. Mix never discloses "details about what goes on in ceremony" to SCC staff.[2] He is not required to and does not report disclosures made by participants. The SCC considers the NAHP as a spiritual and cultural program that may benefit sexually violent predators, but the SCC does not recognize the NAHP as a valid sex offender treatment program.

At the time of his 2014 annual review, Brogi had been actively participating in the NAHP for six years. Brogi had "not recently" participated in the SCC's sex offender treatment program.[3]

For his 2014 annual review, Brogi was evaluated and interviewed by the State's expert, Dr. Robert Saari, and Brogi's expert, Dr. Robert Halon. Dr. Saari concluded Brogi continues to meet the sexually violent predator definition. Dr. Halon concluded Brogi had so changed through his participation in the NAHP that he no longer suffers from a mental abnormality or personality disorder.

At the show cause hearing, the State conceded Brogi presented sufficient evidence for a least restrictive alternative trial but opposed an unconditional release trial.[4] The trial court agreed and denied Brogi an unconditional release trial, concluding he "has not shown probable cause to believe his mental condition has substantially

---

[2] Clerk's Papers (CP) at 71.

[3] CP at 6, 50, 251.

[4] The trial court stayed the least restrictive alternative trial pending this appeal.

changed through a positive response to continuing participation in sex offender treatment."[5]

This court granted discretionary review.

ANALYSIS

A "sexually violent predator" is any person who has been convicted of or charged with a crime of sexual violence and who suffers from a mental condition that makes the person "likely to engage in predatory acts of sexual violence if not confined in a secure facility."[6] An individual committed as a sexually violent predator is entitled to an unconditional release trial if he shows probable cause to believe that he no longer meets the sexually violent predator definition.[7] Probable cause exists when evidence from a licensed professional reflects a "change in the person's mental condition brought about through positive response to continuing participation in treatment" such that "the person would be safe to be at large if unconditionally released from commitment."[8] The change must be "substantial" and must have occurred since the individual's last commitment trial.[9]

We review a trial court's probable cause determination de novo.[10] We also review issues of statutory interpretation de novo.[11] We view the evidence in the light

_____

[5] CP at 6-7.

[6] RCW 71.09.020(18); WAC 388-880-010.

[7] RCW 71.09.090(2)(a).

[8] RCW 71.09.090(4)(b)(ii), (c).

[9] RCW 71.09.090(4)(a), (b).

[10] In re Pers. Restraint of Meirhofer, 182 Wn.2d 632, 643, 343 P.3d 731 (2015).

[11] In re Det. of Anderson, No. 91385-4, 2016 WL 454049, at *2 (Wash. Feb. 4, 2016).

4

most favorable to the individual.[12] We must assume the truth of the evidence presented and do not weigh the credibility of an expert's opinion.[13] But "conclusory statements" do not establish probable cause.[14] We may "look beyond an expert's stated conclusion to determine whether sufficient facts support it."[15]

At the time of Brogi's show cause hearing in 2014, the controlling statutes did not define "treatment."[16] Brogi acknowledges that the meaning of "treatment" must be considered in the context of the statute and that "treatment" must be intended to address the sexually violent predator's mental condition.[17] But Brogi contends the legislature did not intend to limit treatment to the single treatment modality adopted by the SCC. The narrow issue is whether the NAHP is "treatment" as intended by the legislature to allow Brogi an unconditional release trial. Because the NAHP, as described here, is not consistent with the legislature's community safety goals, we conclude the NAHP is not "treatment" that may trigger an unconditional release trial.

Brogi relies upon Dr. Halon's report and Mix's declaration to establish probable cause that he benefited from a treatment-based change through his continuing participation in the NAHP.

---

[12] See Meirhofer, 182 Wn.2d at 638.

[13] Id.

[14] In re Det. of McGary, 155 Wn. App. 771, 780, 231 P.3d 205 (2010); see also In re Det. of Ward, 125 Wn. App. 381, 387, 104 P.3d 747 (2005), superseded by statute on other grounds as recognized by State v. McCuistion, 174 Wn.2d 369, 397-98, 275 P.3d 1092 (2012).

[15] McGary, 155 Wn. App. at 780.

[16] In 2015, the legislature defined "treatment" as "the sex offender specific treatment program at the special commitment center or a specific course of sex offender treatment pursuant to RCW 71.09.092 (1) and (2)." RCW 71.09.020(20).

[17] Appellant's Reply Br. at 1.

Dr. Halon generally describes Native American healing activities as a "cognitive-behavioral strategy."[18] He views such activities as efficacious as the SCC's mainstream sex offender treatment. Because the NAHP encompasses a "global cultural approach to treatment, recovery, and re-socialization," Dr. Halon concludes the resulting changes through the NAHP are "much more likely to be meaningfully internalized" and permanent than other treatment approaches.[19] Dr. Halon principally relies upon Mix's description of the NAHP. The NAHP's volunteer-run activities include various traditional rituals and ceremonies. The program is "organized around the 'red road' of the broad Native American culture" and "is more community- and spiritually-concerned."[20]

Mix identifies the specific changes in Brogi that he has observed: he "takes responsibility for his prior criminal conduct and has developed problem-solving and internal control to stop committing offenses";[21] he understands and accepts "his own violent offense history";[22] and he "has developed positive strategies for expressing his anger."[23] Mix has "witnessed significant change and positive growth in [Brogi] since he began the Native programs."[24] Although Mix has extensive experience as a "spiritual advisor" at the NAHP, he is not a certified sex offender treatment provider.[25] Mix has no prior experience in treating sexually violent predators. Mix's education on sex offender

---

[18] CP at 140.
[19] CP at 147-48.
[20] CP at 147-48.
[21] CP at 180, ¶ 12.
[22] CP at 180, ¶ 12.
[23] CP at 180, ¶ 11.
[24] CP at 181, ¶ 15.
[25] CP at 176, ¶ 2.

treatment modalities is limited to discussions with SCC therapists and other therapists in the community.[26] His training has been mostly "traditional," based upon Native American healing practices.[27] Mix acknowledges that the Native American healing practices are not "psychotherapy."[28] Information shared within the NAHP remains confidential. Mix is not required to and does not report disclosures made by participants. Mix "collaborates" with SCC personnel, but the SCC does not supervise the NAHP.[29] And the NAHP does not keep official records of its activities.

Viewed in a light most favorable to Brogi, Dr. Halon's opinion may support that Native American healing strategies could be a component of sex offender treatment, or even that the SCC should recognize such strategies as sex offender treatment for individuals whose cultural backgrounds are not amenable to the SCC's mainstream sex offender treatment. But the question here is whether the legislature intended to include the NAHP as a form of "treatment" that may trigger an unconditional release trial.

The provision requiring a positive response to treatment was added to RCW 71.09.090 in 2005:

> (4) (a) Probable cause exists to believe that a person's condition has 'so changed' . . . only when evidence exists, since the person's last commitment trial proceeding, of a substantial change in the person's physical or mental condition such that the person either no longer meets the definition of a sexually violent predator . . . .
>
> (b) A new trial proceeding . . . may be ordered . . . only when there is current evidence from a licensed professional of one of the following and the evidence presents a change in condition since the person's last commitment trial proceeding:

---

[26] CP at 92-93.

[27] CP at 92-93.

[28] CP at 70.

[29] CP at 67, 70-71.

. . . .

> (ii) A change in the person's mental condition brought about through *positive response to continuing participation in treatment* which indicates that . . . the person would be safe to be at large if unconditionally released from commitment.[30]

The legislature emphasized the importance of community safety. The 2005 amendments focused upon "the 'very long-term needs' of the sexually violent predator population for treatment and the equally long-term needs of the community for protection from these offenders."[31] The legislature noted its concern with "distracting committed persons from fully engaging in sex offender treatment."[32]

The statute also stresses public accountability. The Department of Social and Health Services must keep official records detailing all "professional care and treatment received by the committed person," and such records must "be made available upon request."[33] Once an individual is conditionally released, he must be examined by a "certified sex offender treatment provider," who must regularly report the individual's progress.[34]

Conclusory statements that the NAHP is treatment are not compelling. Mix's declaration and Dr. Halon's report fail to meaningfully link the NAHP with the legislature's goals of public accountability and community safety. Brogi's long-term participation in the NAHP may have benefited him in ways that the SCC's mainstream

---

[30] Laws of 2005, ch. 344, § 2 (codified at RCW 71.09.090(4)(b)(ii)) (emphasis added).

[31] Laws of 2005, ch. 344, § 1; see also RCW 71.09.020(16), .070(2)(c).

[32] Laws of 2005, ch. 344, § 1.

[33] RCW 71.09.080(3).

[34] RCW 71.09.092, .350(1).

sex offender treatment program could not, but the NAHP's activities are largely confidential and are not supervised or conducted by members of a SCC treatment team. No official records are generated from each treatment session. Such a cultural and spiritual program run by a volunteer without oversight by a SCC treatment provider and documentation of participation and progress lacks a level of public accountability consistent with the legislature's community safety goals.

## CONCLUSION

We conclude that, as described here, the NAHP does not constitute treatment as intended by the legislature in 2014. Therefore, we affirm the trial court's denial of Brogi's petition for an unconditional release trial.[35]

WE CONCUR:

---

[35] We need not reach the alternative theory that we should retroactively apply the 2015 amendment defining "treatment" as limited to sex offender specific treatment. Nor must we address whether retroactively applying the 2015 amendment would violate Brogi's due process and equal protection rights. We are not aware of any pending cases that challenge the meaning of treatment before the 2015 amendment's effective date.